Keith HAHN, Appellant,

v.

WHITING PETROLEUM CORP., RK Petroleum Corp. and Tremont Energy, L.L.C., Appellees.

No. 13–02–391–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

June 9, 2005.

Rehearing Overruled Sept. 15, 2005.

Troy Gilreath, Walker, Keeling & Carroll, Victoria, for appellant.

Duane G. Crocker, Anderson, Smith, Null, Stofer & Murphree, James Stofer, Victoria, for appellees.

Before Justices YAÑEZ, CASTILLO, and GARZA.

## OPINION

Opinion by Justice GARZA.

By nine issues, Keith Hahn challenges a default judgment entered against him on a suit filed by Whiting Petroleum Corporation, RK Petroleum Corporation, and Tremont Energy, LLC. Because we conclude that Hahn satisfied *Craddock's* three-prong test for a new trial following entry of a default judgment, we sustain Hahn's seventh issue, reverse the case, and remand it to the trial court for further proceedings consistent with this opinion. *See Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939).

The plaintiffs' suit against Hahn asserted causes of action for breach of fiduciary duty and constructive fraud. In addition to the claims against Hahn, the suit also asserted causes of action against Core Exploration & Production Corporation for (1) an accounting, (2) relief under section 91.404 of the natural resources code, (3) breaches of two different contracts, (4) breach of fiduciary duty, and (5) constructive fraud. The plaintiffs also sued Del Rio Energy, LLC under a single business enterprise theory, alleging that Del Rio was jointly and severally liable for the acts and omissions on which the claims against Core were premised. The trial court entered a default judgment against all three defendants, jointly and severally, for damages in excess of $1.6 million, including $30,000 in attorney's fees. Only Hahn has appealed.

By two issues, Hahn argues that this Court should reverse the judgment against him and render a take-nothing judgment against the plaintiffs because (1) the judgment is based on a contract theory of recovery which was not pled in the suit against Hahn and (2) the facts alleged in the plaintiffs' petition do not support a cause of action against Hahn for breach of contract, breach of fiduciary duty, or constructive fraud. Notwithstanding Hahn's contention to the contrary, if we were to sustain either of these issues, we would remand the case to the trial court for further proceedings—not render a take-nothing judgment against the plaintiffs. *See Roberts v. Mullen*, 417 S.W.2d 74, 77–79 (Tex.Civ.App.-Dallas 1967) (reversing default judgment and remanding for jury

trial because judgment failed to conform to pleadings), *aff'd*, 423 S.W.2d 576 (Tex. 1968); *C & H Transp. Co. v. Wright*, 396 S.W.2d 443, 446–47 (Tex.Civ.App.-Tyler 1965, writ ref'd n.r.e.) (reversing default judgment and remanding for jury trial because petition did not state a cause of action). Because we sustain Hahn's seventh issue and therefore reverse the judgment and remand the case for further proceedings, we do not reach Hahn's other issues, which would entitle Hahn to equal or lesser relief. *See* TEX.R.APP. P. 47.1.

■ In his seventh issue, Hahn argues that the trial court erred by failing to grant his motion for new trial. Following the entry of a default judgment, a defendant may establish its entitlement to a new trial by satisfying the following three-prong test articulated by the supreme court in *Craddock*: (1) present facts showing that the failure to appear was not intentional or the result of conscious indifference but was due to accident or mistake, (2) set up a meritorious defense, and (3) file the motion for new trial when it would not cause delay or otherwise injure the prevailing party. *Craddock*, 133 S.W.2d at 126.

■ We begin with the first prong: the reason for Hahn's failure to appear. *See id.* To meet this prong, Hahn had to prove that his failure to appear was not intentional on his or his agent's part nor the result of his or his agent's conscious indifference. *Lowe v. Lowe*, 971 S.W.2d 720, 723 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). In *Lowe*, the Fourteenth Court explained that if (1) a lawyer has misled his client, or wholly failed to perform his professional duties, and (2) the client is free of responsibility and knowledge, the client meets the first prong of *Craddock* by showing his own lack of knowledge or lack of responsibility. *Id.* at 724.

Having reviewed the evidence adduced in support of Hahn's motion for new trial, we conclude that the first element of the *Craddock* test has been established. Hahn produced uncontroverted evidence to show that his attorney failed to perform his professional duties. Therefore, Hahn needed to show only his own lack of knowledge and responsibility. *See id.*

The uncontroverted evidence establishes the following facts: upon being served with the plaintiffs' petition, Hahn forwarded the petition and citation to attorney Brian T. McLaughlin, who routinely handled Hahn's legal matters, and asked McLaughlin to file an answer on his behalf. McLaughlin, who works for the law firm of Kerr & Ward, LLP, never filed an answer and did not inform Hahn that he would not represent him. Meanwhile, Kerr & Ward hired attorney Brad Miller, who represented the plaintiffs in the suit against Hahn. Miller continued to represent the plaintiffs against Hahn until April 17, 2002, when attorney James N. Stofer was designated lead counsel for the plaintiffs. On the same day Stofer took over the case for the plaintiffs, a default judgment was entered against Hahn.

Upon review of the Texas Rules of Professional Conduct, we conclude that McLaughlin had a professional duty to inform Hahn that he could no longer represent him because of a conflict of interest. Rule 1.06(a) states, "A lawyer shall not represent opposing parties to the same litigation." TEX.R. PROF'L CONDUCT 1.06(a). Rule 1.06(e) explains that "[i]f a lawyer would be prohibited by this Rule from engaging in particular conduct, no other lawyer while a member or associated with that lawyer's firm may engage in that conduct." *Id.* 1.06(e). Given that Miller represented the plaintiffs, neither McLaughlin nor any other attorney working for Kerr & Ward could represent Hahn, as Hahn and

the plaintiffs were opposing parties to the same litigation. *See id.* Under rule 1.15, McLaughlin had to "give reasonable notice" to Hahn that he could not continue to represent him. *See id.* 1.15(d). McLaughlin also had a duty to take steps to the extent reasonably practicable to protect Hahn's interests. *See id.* The uncontroverted evidence shows that Hahn was never notified that McLaughlin would no longer represent him.

Given that McLaughlin did not perform his duties under the rules of professional conduct, the *Craddock* analysis focuses on whether Hahn proved that his failure to appear was unintentional and not the result of conscious indifference. *See Lowe,* 971 S.W.2d at 724. The uncontroverted evidence shows that on March 18, 2002, the same day Hahn was served, Hahn mailed the petition and citation to his attorney, along with instructions for his attorney to file an answer on his behalf. The evidence also shows that Hahn had no knowledge of his attorney's failure to file an answer until after the default judgment was entered against him on April 17, 2002. Based on this evidence, we conclude that Hahn satisfied the first prong of the *Craddock* test by negating the possibility of intentional or consciously indifferent conduct.

■■■ Next, we address the second prong of the *Craddock* test: whether Hahn set up a meritorious defense. *See Craddock,* 133 S.W.2d at 126. A meritorious defense is one that, if proved, would cause a different result upon retrial of the case, though it need not be a totally opposite result. *Ferguson & Co. v. Roll,* 776 S.W.2d 692, 698 (Tex.App.-Dallas 1989, no writ). A motion for new trial should be granted if the facts alleged in the motion and supporting affidavits set up a meritorious defense, regardless of whether those facts are controverted. *Id.* If the motion

for new trial and affidavits raise several defenses, the second prong of the *Craddock* test will be satisfied if any one of its defenses qualifies as meritorious. *Id.*

The plaintiffs' petition asserted causes of action against Hahn for breach of fiduciary duty and constructive fraud. The plaintiffs' causes of action are both based on a fiduciary relationship between themselves and Hahn; however, Hahn's evidence in support of his motion for new trial showed that he was not a party to any contract with the plaintiffs and owed the plaintiffs no fiduciary duties. Hahn's evidence further showed that he had no agreements with his co-defendants, Core and Del Rio, to defraud the plaintiffs of their revenues. This evidence set up defenses that, if proved, would cause a different result upon retrial of the case. *See id.* Accordingly, we conclude that Hahn has met the second prong of the *Craddock* test.

■■■ The third prong of the *Craddock* test is that the defendant "file the motion for new trial when it would not cause delay or otherwise injure the prevailing party." *Craddock,* 133 S.W.2d at 126. In determining this factor, courts should deal with the facts on a case-by-case basis in order to do equity. *Angelo v. Champion Rest. Equip. Co.,* 713 S.W.2d 96, 98 (Tex.1986). That a defendant offers to reimburse the plaintiff for costs associated with the default judgment and states it is prepared for immediate trial are factors to be considered in making such a case-by-case determination. *Cliff v. Huggins,* 724 S.W.2d 778, 779 (Tex.1987). Once a defendant alleges the granting of a new trial will not injure the plaintiff, the burden shifts to the plaintiff to establish proof of injury. *Dir., State Employees Workers' Comp. Div. v. Evans,* 889 S.W.2d 266, 270 (Tex.1994).

■■■ Hahn's motion stated that a new trial would not cause delay or prejudice to

the plaintiffs. It also stated that Hahn is prepared for trial and is willing to reimburse the plaintiffs for reasonable attorneys' fees and expenses incurred in obtaining the default judgment. Hahn's affidavit made similar statements. The burden thus shifted to the plaintiffs to establish proof of injury. *See id.* The plaintiffs did not file any response to Hahn's motion for new trial or produce any rebuttal evidence. At the hearing on the motion, counsel for the plaintiffs argued that they would be injured by a retrial because it would affect their standing as judgment creditors in a receivership proceeding involving Hahn's co-defendant Core Exploration; however, Core has not appealed the judgment. Only Hahn, in his individual capacity, has appealed. The prospective injury alleged by the plaintiffs does not relate to a new trial on the claims against Hahn and thus does not prevent Hahn from meeting the third prong of the *Craddock* test. Consequently, we conclude that Hahn has established all three prongs of the test.

Accordingly, the judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.

Dissenting Opinion by Justice ERRLINDA CASTILLO.

Dissenting Opinion by Justice CASTILLO.

I respectfully dissent. I write separately to explain the reasons I would affirm the default judgment.

1. Hahn does not challenge issuance or service of citation.

2. The wells were the Rose and Sample # 1, Dincans # 2, Kolle # 1, and Tucker # 1. Along with the other claims, Whiting sued Core for breach of the Rose JOA dated Febru-

# I. RELEVANT FACTS

Appellant Keith Hahn appeals from a default judgment holding him jointly and severally liable for damages and attorney fees. The underlying suit asserted several causes of action, alleging generally that Hahn and two companies misappropriated proceeds of mineral production under joint operating agreements. The trial court denied Hahn's motion for new trial, and this appeal ensued.

## A. The Original Petition

On March 13, 2002, appellees Whiting Petroleum Corp., RK Petroleum Corp., and Tremont Energy, L.L.C. (collectively "appellees") sued Hahn, Core Exploration & Production Corp., and Del Rio Energy, L.L.C. In their petition, appellees requested service of citation on Core by serving "its President" Hahn, and on Del Rio by serving "its representative," also Hahn. The address for service indicated "4408 Lilac Lane, Victoria, Texas." [1] Appellees alleged Hahn was the owner of Core and Del Rio.

Appellees alleged they had entered into four separate joint operating agreements ("JOAs") with Core, involving four oil and gas wells.[2] Under the agreements, Core allegedly arranged with the purchasers of production to have 100% of the production proceeds sent to Core. According to the petition, Core then became responsible to the owners, including appellees, for the production proceeds and distribution of the revenue to them. According to appellees, when Core undertook responsibility for the care and control over appellees' revenues, Core's duties to the appellees were elevat-

ary 23, 1994 (which governed the Rose and Sample # 1 wells) and for breach of the Dincans JOA dated September 15, 1999 (which governed operations of the Dincans # 2, Kolle # 1, and Tucker # 1 wells).

ed to those of a fiduciary in law and in fact under the joint operating agreements. Over time, Core allegedly delayed payment of the revenues from the wells. Beginning in May 2001, Core allegedly ceased paying the revenues altogether and had not paid up to the date the lawsuit was filed. The petition also alleges that Core and Del Rio, through Hahn, conspired to deprive appellees of their working interest, royalty interests in the wells, and revenues from the wells.

Appellees sought joint and several liability and damages for: (1) breach of contract; (2) civil conspiracy; (3) statutory relief under section 91.401 of the Texas Natural Resources Code for non-payment of royalties on oil and gas produced from wells, and interest; (4) breach of express warranty; (5) negligence; (6) breach of fiduciary duty; (7) fraud; and (8) constructive fraud. Appellees also sought an accounting and attorney fees, and sought liability under the single business enterprise theory, alleging that the Core and Del Rio corporations comprised a single business enterprise.

### B. Motion for Default Judgment

#### 1. Damages

On April 17, 2002, appellees filed a motion seeking a default judgment and two filed affidavits in support of the claim for attorney fees and damages. The affidavit of John R. Hazlett, the Vice President of Land for Whiting, based on personal knowledge, recites several paragraphs contained in appellees' original petition, stating that Core operated the wells which were the basis of the four joint operating agreements. Further, the affidavit provides:

5. As operator of all the above wells Core arranged with the purchasers of production to have 100% of all proceeds of production paid to Core. Core then

was responsible to the owners of such production proceeds to distribute their revenue to them. The owners include these Plaintiffs, other working interest owners in the wells, overriding royalty interest owners, if any, and royalty owners. Core also was responsible for payment of severance and ad valorem taxes on the production revenues and the leasehold estates, respectively.

6. Beginning in May 2001 and continuing until January 1, 2002, Core ceased paying to the Plaintiffs and all other owners, except to Core and its related corporate entity and co-Defendant, Del Rio Energy, L.L.C. ("Del Rio"), their respective production revenues pursuant to the Operating Agreements governing said wells, as well as corresponding severance and ad valorem taxes, in such sums as shown on Exhibit "A", and has not made any payments up to the time of the date of this affidavit.

7. To the best of my knowledge and belief, Keith Hahn is the owner of Core and Del Rio.

8. Whiting is now the operator of the above leases and wells and as such is responsible for collection and payment of all royalty interests, ad valorem taxes and severance taxes not paid by Defendants.

9. After allowing any and all credits and offsets, the Defendants owe the following amounts to the respective Plaintiffs:

WHITING PETROLEUM CORP—$1,468,443.00, inclusive of unpaid royalty interests and unpaid severance and ad valorem taxes;

RK PETROLEUM CORP—$59,799.00;

TREMONT ENERGY, L.L.C.—$17,872.00

10. The Defendants' conduct as described in our Original Petition was the

proximate cause of the ... damage amounts as to the Plaintiffs.

FURTHER, AFFIANT SAYETH NAUGHT.

SIGNED this 17th day of April 2002.

/s/ John R. Hazlett

"Exhibit A" attached to the affidavit is a spreadsheet that states, "Core E and P Corporation Summary of Unpaid Items ... As of April 16, 2002 ... Prepared by T. Ohl." It includes columns with the names of the four wells, 100% revenues, each of appellees' percentage royalty interests, net revenues, 100% severance tax, 100% ad valorem tax and the total amount due.

### 2. Attorney Fees

The affidavit of counsel based the attorney fee amount on a review of the attorney fee records in his possession.

### C. Default Judgment

The trial court granted a default judgment on April 17, 2002, in favor of appellees and against Hahn, Core, and Del Rio, jointly and severally, in the exact amounts set forth in Hazlett's affidavit. No live testimony was taken on the issue of damages at that time, according to the affidavit of the court reporter which was later presented with Hahn and Del Rio's motion for new trial. The trial court granted attorney fees in the exact amount contained in counsel's affidavit.[3]

### D. Motion for New Trial

Core did not file a motion for new trial. Hahn and Del Rio filed a joint motion for new trial. Grounds set forth in the motion for new trial included that the parties had satisfied the requirements of *Craddock v. Sunshine Bus Lines,* 134 Tex. 388, 133 S.W.2d 124 (1939). Hahn and Del Rio

alleged that the petition failed to articulate a claim against Hahn that supported the default judgment. The motion for new trial also urged that there was no evidence that: (1) plaintiffs and defendants were parties to a joint operating agreement; (2) defendants were in violation of the joint operating agreements; (3) Core and Del Rio operated as a single business; (4) defendants had conspired to deprive plaintiffs of revenues; (5) supported the damages award; (6) any causal nexus existed between the event sued on and the damages; and (7) appellees were billed 120 hours at the rate of $250.00, or that the attorney fee award was reasonable. Finally, appellees alleged that the affidavit tendered in support of the default judgment was conclusory, and thus not evidence, and the absence of a court reporter's record of a hearing on a default judgment awarding unliquidated damages mandated a new trial.

After a hearing on the motion for new trial on June 14, 2002, the trial court denied the motion. This appeal ensued.

### II. ISSUES PRESENTED

Hahn presents the following issues on appeal: (1) whether the trial court's judgment is final, and if so, upon which theories; (2) if judgment is based on the contract theory, what is the appropriate measure of damages; (3) if the judgment is based on constructive fraud and fiduciary duty theories of recovery, what is the appropriate measure of damages; (4) whether the appropriate theory of damages was pled; (5) whether legally sufficient evidence exists to prove the correct theory of damages; (6) whether the judgment conformed to the pleadings; (7) whether the trial court abused its discretion by failing to grant Hahn a new trial

---

3. A Rule 239a notice of default judgment is in the appellate record. *See* Tex.R. Civ. P. 239a.

on equitable grounds; (8) whether the absence of a reporter's record mandates a new trial; and (9) whether the attorney fee award is necessary or reasonable.

## III. JURISDICTION

Hahn's first issue addresses and concludes that the default judgment is a final judgment. I agree. An appeal may be taken only from a final judgment. *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195 (Tex.2001); *First Nat'l Bank v. De Villagomez*, 54 S.W.3d 345, 347–48 (Tex. App.-Corpus Christi 2001, pet. denied). I note that Core did not file a motion for new trial or a notice of appeal. Although Del Rio filed a motion for new trial, it did not file a notice of appeal. With respect to appellees' first issue, the default judgment is, thus, final and not appealable as to Core and Del Rio. This Court has jurisdiction only as it relates to Hahn.

## IV. WAIVER

A motion for new trial is one of five ways to preserve error for no evidence challenges. *Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex.1991). To preserve error, the motion must be sufficient to call the trial court's attention to the matter at issue. Tex.R.App. P. 33.1(a); *Wal–Mart Stores, Inc. v. McKenzie*, 997 S.W.2d 278, 280 (Tex.1999) (per curiam). Additionally, the issue on appeal must correspond to the motion made at trial. *See In the Matter of T.R.S.*, 931 S.W.2d 756, 758 (Tex.App.-Waco 1996, no writ). In other words, a motion which states one legal theory cannot be used to support a different legal theory on appeal. *Id.*

Hahn's motion for new trial alleged there was no evidence to support the attorney fee allegations that appellees were billed 120 hours at the rate of $250.00. In his ninth issue, he asserts the attorney fee award was not necessary or reasonable. Because the issue on appeal as to attorney fees does not correspond to the motion made to the trial court, Hahn has waived error. I would overrule his ninth issue.

Similarly, Hahn has waived error as to several additional issues raised in his appeal because he failed to make those complaints to the trial court. *See* Tex.R.App. P. 33.1(a)(1). I would overrule Hahn's second, third, and fourth issues.[4]

## V. SUFFICIENCY OF THE PETITION TO SUPPORT A DEFAULT JUDGMENT

In his sixth issue, Hahn contends that the judgment did not conform to the pleadings. A default judgment proceeding can occur where no answer has been filed. Tex.R. Civ. P. 239. Failure to file an answer operates as an admission of the material facts alleged in that petition, except as to unliquidated damages. *First Dallas Petroleum, Inc. v. Hawkins*, 727 S.W.2d 640, 645 (Tex.App.-Dallas 1987, no writ) (later disapproved on other grounds) (citing *Village Square, Ltd. v. Barton*, 660 S.W.2d 556, 559 (Tex.App.-San Antonio 1983, writ ref'd n.r.e.)). Therefore, the defendant against whom a default judgment is rendered is precluded from raising certain issues on appeal. *Id.* (citing *First Nat'l Bank of Irving v. Shockley*, 663 S.W.2d 685, 688 (Tex.App.-Corpus Christi 1983, no writ)). In reviewing a default judgment, we may not examine the suffi-

---

4. These are, respectively: the appropriate measure of damages if based on a contract theory of recovery; the appropriate measure of damages if the trial court's judgment were based on the constructive fraud and fiduciary duty theories of recovery; and whether the appropriate theory of damages was pled.

ciency of the evidence to support liability. *Id.*

However, the rule that defects in pleadings are waived when written exceptions are not made "shall not apply to any party against whom default judgment is rendered." Tex.R. Civ. P. 90; *First Dallas Petroleum,* 727 S.W.2d at 645. In such circumstances, we may examine the pleadings in order to determine whether they sufficiently plead a cause of action on which to support the judgment. *First Dallas Petroleum,* 727 S.W.2d at 645 (citing *Caruso v. Krieger,* 698 S.W.2d 760, 762 (Tex.App.-Austin 1985, no writ)) (default judgment not supported by the pleadings is fundamentally erroneous); *see also Paramount Pipe & Supply Co. v. Muhr,* 749 S.W.2d 491, 494 (Tex.1988); *Stoner v. Thompson,* 578 S.W.2d 679, 684 (Tex.1979) (the non-answering party in a default judgment "admits" facts which are *properly pled* ) (emphasis added). A default judgment will be held erroneous only if (1) the petition does not attempt to state a cause of action that is within the jurisdiction of the court; (2) the petition does not give fair notice to the defendant of the claim asserted; or (3) the petition affirmatively discloses the invalidity of such claim. *Stoner,* 578 S.W.2d at 685.

Careful evaluation of both the first and second provisions is vital because, even where a defendant fails to file an answer, if no liability exists against him as a matter of law on the facts alleged in the petition, then the fact that he has defaulted by failing to file an answer cannot create liability. *First Dallas Petroleum,* 727 S.W.2d at 645; *see also U.S. Fid. & Guar. Co. v. Cascio,* 723 S.W.2d 209, 211 (Tex. App.-Dallas 1986, no writ); *Morales v. Dalworth Oil Co.,* 698 S.W.2d 772, 775 (Tex.App.-Fort Worth 1985, writ ref'd n.r.e.).

Hahn's sixth issue on appeal contends that the underlying petition was insufficient to maintain a cause of action against him. The motion for new trial asserted that "Plaintiffs' petition ... fails to plead any facts that prove Hahn or Del Rio owed any duties to Plaintiffs." Accordingly, it is proper to consider whether the pleadings set forth a prima facie cause of action against Hahn individually. For the reasons set out above, I would review this issue as it relates to Hahn only.

Pleadings must give fair notice of the claim asserted. *See* Tex.R. Civ. P. 45, 47. Rule 45 mandates plain and concise language and provides that the fact "that an allegation be evidentiary or be of legal conclusion shall not be grounds for objection when fair notice to the opponent is given by the allegations as a whole." Tex.R. Civ. P. 45. Rule 47 requires that an original pleading include "a short statement of the cause of action sufficient to give fair notice of the claim involved," but it does not require that the plaintiff set out in his pleadings the evidence upon which he relies. Tex.R. Civ. P. 47; *see Paramount Pipe,* 749 S.W.2d at 494–95.

The petition alleges that Hahn had a duty to act for the benefit of the appellees, which he breached, and that he acted in his own self interest to the detriment of appellees. The petition further alleges that he had a duty to disclose and remit gas proceeds generated by wells in which appellees owned working interests and, by failing to do so, he committed constructive fraud.

I conclude that the petition adequately stated a cause of action within the jurisdiction of the court. *Paramount Pipe,* 749 S.W.2d at 494. I further conclude that the petition sufficiently alleged: (1) the breach of fiduciary duty and constructive fraud claims against Hahn; and (2) damages on

both claims.[5] I would overrule Hahn's sixth issue.

## V. MOTION FOR NEW TRIAL

In his seventh issue, Hahn argues that the trial court abused its discretion in failing to grant him a new trial on equitable grounds. Because the petition is sufficient, Hahn must satisfy the requirements to set aside a default judgment. A trial court's discretion in determining whether to grant a new trial after a default judgment has been entered must be considered in light of the guiding rule set out in *Craddock v. Sunshine Bus Lines,* 134 Tex. 388, 133 S.W.2d 124, 126 (1939). *See Smith v. Babcock & Wilcox Constr. Co.,* 913 S.W.2d 467, 468 (Tex.1995) (per curiam); *Limestone Constr., Inc. v. Summit Commercial Indus. Props.,* 143 S.W.3d 538, 542 (Tex.App.-Austin 2004, no pet.). The rule is:

> A default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; provided the motion for a new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

*Bank One, Texas, N.A. v. Moody,* 830 S.W.2d 81, 82 (Tex.1992) (citing *Craddock,* 133 S.W.2d at 126).

When applying the *Craddock* test, the trial court looks to the knowledge and acts of the defendant as contained in the record before the court. *Strackbein v. Prewitt,* 671 S.W.2d 37, 38–39 (Tex.1984). Where factual allegations in a movant's affidavits are uncontroverted, it is sufficient that the motion for new trial and accompanying affidavits set forth facts which, if true, would satisfy the *Craddock* test. *Cliff v. Huggins,* 724 S.W.2d 778, 779 (Tex.1987); *Strackbein,* 671 S.W.2d at 38–39. However, conclusory allegations are insufficient. *Folsom Invs., Inc. v. Troutz,* 632 S.W.2d 872, 875 (Tex.App.-Fort Worth 1982, writ ref'd n.r.e.).

### A. Standard of Review

A motion for new trial is addressed to the trial court's discretion and the court's ruling on such will not be disturbed on appeal, absent a showing of an abuse of that discretion. *Strackbein,* 671 S.W.2d at 38; *Coastal Banc SSB v. Helle,* 48 S.W.3d 796, 800 (Tex.App.-Corpus Christi 2001, pet. denied). In reviewing a trial court decision under an abuse of discretion standard, we must determine whether the trial court acted without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). The exercise of discretion is within the sole province of the trial court, and an appellate court may not substitute its discretion for that of the trial judge. *Johnson v. Fourth Ct.App.,* 700 S.W.2d 916, 918 (Tex.1985). Rather, an abuse of discretion occurs only when the trial court reaches a decision that is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* at 917.

### B. Failure to Answer Due to Mistake or Accident

In the affidavit accompanying his motion for new trial, Hahn stated that: (1) upon

---

**5.** Thus, deciding the sufficiency of the petition on the conspiracy claim is not necessary. *See Paramount Pipe & Supply Co. v. Muhr,* 749 S.W.2d 491, 494 (Tex.1988) (a default judgment will be held erroneous only if the petition does not attempt to state a cause of action within the jurisdiction of the court).

being served, he forwarded the petition and citation to Brian McLaughlin with the firm of Kerr & Ward, with instructions to file an answer on his behalf; (2) Kerr and Ward routinely handled his legal matters; (3) sometime around this period, Kerr & Ward hired an attorney named Brad Miller,[6] who was formerly a partner with Woerdle, Strain & Miller, LLP.; (4) Miller filed the original petition on behalf of appellees; (5) as a result, there was a conflict of interest with respect to McLaughlin's representation of Hahn; (6) prior to receiving the notice of default judgment from the court, Hahn was never informed of the conflict or of any decision by McLaughlin not to proceed or file an answer on his behalf; (7) Miller remained counsel for appellees in the underlying case until April 17, 2002, the date the default judgment was taken; (8) that same day, appellees filed and the court granted their notice of designation of James Stofer as their new counsel; (9) Stofer previously represented an entity for which Hahn was the sole shareholder and director, and Stofer received confidential information in the course of that representation which may have created a conflict of interest with his representation of appellees; and (10) Hahn had no knowledge of Stofer's representation of the appellees in this case until he received the notice of default judgment.

Appellees did not controvert Hahn's affidavit. Where, as here, factual allegations in a movant's affidavit are not controverted, a conscious indifference question must be determined in the same manner as a claim of meritorious defense. *Strackbein,* 671 S.W.2d at 38. It is sufficient that the movant's motion and affidavits set forth facts which, if true, would negate intentional or consciously indifferent conduct. *Id.* at 38–39 (citing *Dallas Heating Co., Inc. v. Pardee,* 561 S.W.2d 16, 20 (Tex.Civ.

App.-Dallas 1977, writ ref'd n.r.e.)); *see also Ivy v. Carrell,* 407 S.W.2d 212, 214 (Tex.1966). Negligence, however, is not the test by which the defaulting party's actions are measured. *Pardee,* 561 S.W.2d at 19 (citing *Carrell,* 407 S.W.2d at 214; *O'Hara v. Hexter,* 550 S.W.2d 379, 382 (Tex.Civ.App.-Dallas 1977, writ ref'd n.r.e.)). In determining whether there was intentional disregard or conscious indifference, we must look to the knowledge and acts of both the defendant and his agent. *See Estate of Pollack v. McMurrey,* 858 S.W.2d 388, 391 (Tex.1993); *Strackbein,* 671 S.W.2d at 39.

Hahn's affidavit addresses his own actions and intent. It establishes (1) he forwarded the initial suit papers to McLaughlin, (2) McLaughlin routinely handled his legal matters, (3) Hahn instructed McLaughlin to file an answer on his behalf, and (4) Hahn was unaware until the default judgment was taken that McLaughlin never filed an answer to this lawsuit.

Whether Hahn's own conduct did or did not constitute conscious indifference, his affidavit fails to address the intentions or conduct of McLaughlin or Kerr & Ward. Hahn's affidavit reflects his intent that McLaughlin serve as his agent to prepare the answer to the suit on his behalf. *See Grissom v. Watson,* 704 S.W.2d 325, 326 (Tex.1986). No evidence exists to controvert that assertion.

When a party's excuse for his failure to answer a suit is his reliance on a third-party agent or attorney to file his answer or to notify him of a trial setting, he must similarly prove that the third party's failure was due to accident or mistake and was not intentional or the result of conscious indifference. *See Estate of Pollack,* 858 S.W.2d at 391 (citing *Carey Crutcher,*

---

6. Miller was referred to as both "Brian" and "Brad" throughout the record.

*Inc. v. Mid–Coast Diesel Servs., Inc.*, 725 S.W.2d 500, 502 (Tex.App.-Corpus Christi 1987, no writ), *overruled on other grounds, Dir., State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266 (Tex.1994); *Wells v. S. States Lumber and Supply Co.*, 720 S.W.2d 227, 229 (Tex.App.-Houston [14th Dist.] 1986, no writ)); *see also Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex.1992).

Here, Hahn does not address the conduct of his third party agent or attorney. Hahn fails to offer any reasonable explanation why counsel failed to file an answer in the case. *Wells*, 720 S.W.2d at 229. There is no attached affidavit of McLaughlin attesting to inadvertence or mistake.[7] Without evidence as to Hahn's agent's state of mind and actions, Hahn cannot take advantage of the equitable remedy announced in *Craddock*. *See Harris v. Lebow*, 363 S.W.2d 184, 186 (Tex.Civ.App.-Dallas 1962, writ ref'd n.r.e.). I conclude that Hahn failed to satisfy the lack of conscious indifference element of *Craddock*. The trial court did not abuse its discretion in denying Hahn's motion for new trial. *See id.; Heine*, 835 S.W.2d at 83.

I remain mindful of the additional requirements set forth in *Craddock*, including the meritorious defense and delay elements. All three components of *Craddock* must be satisfied in order to merit a new trial. Because Hahn has failed to satisfy the first prong, determinating whether he proved the remaining *Craddock* elements is not necessary. *See BancTEXAS McKinney, N.A. v. Desalination Sys., Inc.*, 847 S.W.2d 301, 303 (Tex.App.-Dallas 1992, no writ). I would overrule Hahn's seventh issue.

## VI. THE DAMAGES AWARD

In his fifth issue, Hahn specifically attacks the damages award, asserting there is no evidence to support the default judgment in this respect. This legal-sufficiency challenge is reviewed as a no-evidence issue. *Gooch v. Am. Sling Co.*, 902 S.W.2d 181, 183–84 (Tex.App.-Fort Worth 1995, no writ). Hahn must show that the record presents no probative evidence to support the adverse finding. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983).

---

**7.** In his affidavit, Hahn does make allegations that his attorney had a conflict of interest which, presumably, led him not to answer the suit. I pause to address the situation in *Lowe v. Lowe*, 971 S.W.2d 720 (Tex.App.-Houston [14th Dist.] Houston 1998, no pet.). In that case, the attorney affirmatively misled his client by failing to advise her of the date of trial and by telling her that his motion for continuance had been granted. The attorney agent appeared in court on the date of trial to announce "not ready" and present his motion for continuance, which was denied. He then failed to reappear later that morning for trial. Because his client was unaware a trial was scheduled for that date, she similarly failed to appear and a default judgment was entered. Our sister court held:

> ... [W]here (1) the lawyer has misled the client, or wholly failed to perform his or her professional duties, and (2) the client is free of responsibility and knowledge, the client

meets the first prong of *Craddock* by showing her own lack of knowledge or lack of responsibility. For example, in this case, Mrs. Lowe's lawyer told her the July 15 trial was continued and he gave her a timetable which supported that statement. To her knowledge, the trial was continued, and we are not going to hold her responsible for her lawyer's apparent fraudulent actions.... The exception to this rule is that the agent's knowledge is not imputed to the principal when the agent engages in fraudulent conduct.

*Lowe*, 971 S.W.2d at 723–24. In this case, the facts alleged as to Hahn's attorney's conduct do not reach the level of fraud. I respectfully note that Hahn is not entirely "free of responsibility or knowledge" that an answer to the lawsuit was required, and so he would not meet the narrow exception recognized in *Lowe*.

## A. Liquidated or Unliquidated Damages

Under rules 241 and 243 of the Texas Rules of Civil Procedure, proof is required only with respect to damages which are either unliquidated or not proven by a written instrument. *See* Tex.R. Civ. P. 241, 243. *Pentes Design, Inc. v. Perez,* 840 S.W.2d 75, 79 (Tex.App.-Corpus Christi 1992, writ denied). A claim for contract damages is "unliquidated" if the damages cannot be accurately calculated by the trial court from the factual allegations in the plaintiff's petition and the written contract. *Atwood v. B & R Supply & Equip. Co., Inc.,* 52 S.W.3d 265, 268 (Tex.App.-Corpus Christi 2001, no pet.).

The petition raised several claims, including claims for accounting, statutory relief, breach of contract, breach of fiduciary duty, fiduciary fraud, and constructive fraud. The prayer requests judgment for debts owed, as well as exemplary damages. The petition does not attach any contracts or joint operating agreements. The affidavit of John Hazlett, Vice President of Land for Whiting, filed in support of the motion for default judgment, does not articulate the specific claim underlying his calculations and does not attach the contractual agreements upon which he relies.

A trial court can properly render a default judgment for "liquidated damages" only if it can verify the damages by referring to the allegations in the petition and the written instruments. *BLS Limousine Serv., Inc. v. Buslease, Inc.,* 680 S.W.2d 543, 547 (Tex.App.-Dallas 1984, writ ref'd n.r.e.). A liquidated claim is one that can be accurately calculated by the court, or under its direction, from the allegations contained in plaintiff's petition and the instrument in writing. *First Nat'l Bank of Irving v. Shockley,* 663 S.W.2d 685, 688 (Tex.App.-Corpus Christi 1983, no writ) (citing *Freeman v. Leasing Assocs., Inc.,* 503 S.W.2d 406, 408 (Tex.Civ.App.-Houston [14th Dist.] 1973, no writ)). Where damages cannot be accurately calculated from the factual as opposed to conclusory allegations in the petition and an instrument in writing, they are unliquidated. *See Walker v. Ricks,* 101 S.W.3d 740, 748 (Tex.App.-Corpus Christi 2003, no pet.) (citing *Pentes Design,* 840 S.W.2d at 79); *see also Freeman,* 503 S.W.2d at 408.

The underlying petition does not provide any basis for calculating the amount due under the joint operating agreements. Accordingly, I cannot conclude that the damages awarded were liquidated damages. *Shockley,* 663 S.W.2d at 689.

## B. Legal Sufficiency Standard of Review

In determining a legal sufficiency question, we consider only the evidence and inferences that tend to support the finding, and disregard all evidence and inferences to the contrary. *Heine,* 835 S.W.2d at 84. If there is more than a scintilla of evidence to support the finding, the no-evidence challenge fails. *Id.* The evidence is no more than a scintilla and, in legal effect, is no evidence "[w]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence." *Kindred v. Con/ Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). Conversely, more than a scintilla exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex.1994). We reverse and render judgment when we sustain a legal-sufficiency point. *Vista Chevrolet, Inc. v. Lewis,* 709 S.W.2d 176, 177 (Tex.1986) (per curiam); *Heritage Res., Inc. v. Hill,* 104 S.W.3d 612, 619 (Tex.App.-El Paso 2003, no pet.).

## C. Discussion

### 1. Personal Knowledge

Hazlett's affidavit was appellees' sole proof of damages. Hahn maintains that, because Hazlett did not attest that he was a representative of either RK or Tremont, he could not properly testify to or confirm facts as to RK or Tremont. However, in his affidavit Hazlett stated: (1) he is the vice president of Whiting; (2) he has "personal knowledge of the matters set forth herein;" (3) as operator of the well, Whiting is responsible for collection and payment of the royalty interests, ad valorem taxes, and severance taxes not paid by Hahn, Core and Del Rio; and (4) accordingly, Hazlett is in position to assert that he has personal knowledge as to the amounts owed. An affidavit is sufficient if it is based upon personal knowledge. *Campbell v. Fort Worth Bank & Trust*, 705 S.W.2d 400, 402 (Tex.App.-Fort Worth 1986, no writ).

### 2. Calculation of Damages

Hahn contends the affidavit is conclusory as to damages. Hazlett's affidavit lists the amounts owed to each of the appellees. In his affidavit, Hazlett repeatedly references an attached exhibit, which details the manner in which Hazlett calculated damages based upon each appellee's percent ownership interest in the wells, net revenues, severance taxes, and ad valorem taxes.[8] Testimony of the total amount due under a written instrument, provided in affidavit form, is legally sufficient to support an award of that amount in a default judgment proceeding. *Texas Commerce Bank, Nat'l Ass'n v. New*, 3 S.W.3d 515, 517 (Tex.1999) (per curiam). Pleadings and affidavits constitute a record upon which the court may base a default judgment, where the affidavit states "the total amount due." *Barganier v. Saddlebrook Apts.*, 104 S.W.3d 171, 173 (Tex.App.-Waco 2003, no pet.). Hazlett's affidavit is legally sufficient to support an award of that amount in the default proceeding.

### 3. Benefit of the Bargain or Out–of–Pocket Damages

Hahn asserts there is no evidence to support a damages award based upon either benefit of the bargain or out-of-pocket damages. Benefit of the bargain damages are properly recoverable if a party prevails on a common law tort cause of action, including a cause of action for deceit or fraud. *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex.1998). The *Formosa Plastics* court advised that "Texas recognizes two measures of direct damages for common-law fraud: the out-of-pocket measure and the benefit-of-the-bargain measure.... [T]he benefit-of-the-bargain measure computes the difference between the value as represented and the value received." *Id.* (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex.1997)); *see also Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex.2001) (economic losses may be recoverable under a fraud claim). I conclude that Hazlett's affidavit is legally sufficient to prove benefit of bargain damages. It sets forth in sufficient detail the monies which appellees would have received but for the alleged breaches of duty and/or fraud. These monies are consistent with a theory of damages that is appropriate for the causes of action alleged. *Formosa Plastics*, 960 S.W.2d at 49.

---

8. Because the affidavit provides the detail on how the monies owing were calculated, this Court does not face the situation encountered in *Lefton v. Griffith*, 136 S.W.3d 271, 277 (Tex.App.-San Antonio 2004, no pet.) (holding Griffith's allegations failed to provide a factual basis to support her conclusions).

### 4. Proof by Affidavit

Hahn next argues that these damages were not properly proven through affidavit. To the contrary, a trial court may rely on affidavits in proving unliquidated damages in default judgments. *New*, 3 S.W.3d at 517. Rule 802 of the Texas Rules of Evidence, the hearsay rule, will not prevent use of evidence in the form of affidavits in the context of a default judgment. *New*, 3 S.W.3d at 517. Affidavits are probative evidence of unliquidated damages. *Id.* "Testimony of the total amount due under a written instrument is legally sufficient to support an award of that amount in a default judgment proceeding." *Id.* Hazlett's affidavit included the total amounts due under the Rose and Dincans joint operating agreements, both of which were written instruments. The affidavit included an attached schedule detailing how those amounts were calculated.

### 5. Disposition

I conclude that the evidence of damages constituted more than a scintilla and is legally sufficient to support the amount of damages awarded. I would overrule Hahn's fifth issue.

## VII. REPORTER'S RECORD

In his eighth issue, Hahn asserts he is entitled to a new trial in the absence of a reporter's record. Rule 243 of the Texas Rules of Civil Procedure states that if the cause of action is unliquidated or cannot be proved by an instrument in writing, the court shall hear evidence as to damages and shall render judgment therefor, unless the defendant shall demand and be entitled to a trial by jury. TEX.R. CIV. P. 243; *see also Heine*, 835 S.W.2d at 83. In some cases, the lack of a reporter's record may entitle a defendant to a new trial because he will be unable to obtain some record of the evidence to be reviewed by an appellate court. *Barganier*, 104 S.W.3d at 174.

The motion for default judgment contained the affidavit of Whiting's vice-president attesting to damages, and the affidavit of counsel attesting to attorney fees. The affidavits are probative evidence for purposes of an unliquidated-damages hearing pursuant to rule 243. *New*, 3 S.W.3d at 516. The trial court did not abuse its discretion when it considered the affidavits in rendering its default judgment. *Id.* at 517.

The affidavits in this case are part of the clerk's record. I have concluded the affidavits are sufficient to support the judgment. Thus, the lack of a reporter's record does not require reversal of the judgment. *New*, 3 S.W.3d at 517; *see* TEX.R.APP. P. 44.1(a)(1), (2); *Saddlebrook Apts.*, 104 S.W.3d at 174–75. I would overrule Hahn's eighth issue.

## VIII. CONCLUSION

Respectfully, I conclude that Hahn waived his second, third and fourth issues. I would overrule (1) his first issue, because the trial court's judgment is final, and (2) his fifth, sixth, seventh, eighth and ninth issues. Accordingly, I would affirm the judgment of the trial court.